**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**


**MARY A. EADS,**

      **Plaintiff,**

**vs.**                                                    **CASE NO. 1:05CV194-MMP/AK**

**MICHAEL J. ASTRUE,[1]
Commissioner of Social Security**

      **Defendant.**

_____/


**REPORT AND RECOMMENDATION**

      This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for disability insurance benefits (DIB) filed under Title II of the Act and supplemental security income benefits (SSI) filed under Title XVI of the Act.

      Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

_____

      [1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

A.    **PROCEDURAL HISTORY**

Plaintiff filed an application for DIB and SSI on November 6, 2002, alleging a

disability onset date of April 30, 2001, because of cervical disc fusion.  Plaintiff

petitioned for a hearing before an administrative law judge (ALJ), who conducted a

hearing on June 22, 2004, and entered an unfavorable decision on September 18,

2004.  The Appeals Council denied Plaintiff's request for review, thus making the

decision of the ALJ the final decision of the Commissioner.  This action followed.

B.    **FINDINGS OF THE ALJ**

The ALJ found that Plaintiff had post cervical discectomy and fusion, which was a

severe impairment within the meaning of the Act, but that she does not have any

impairment that meets the criteria of any of the Listings of Impairments.  The ALJ further

found that Plaintiff was capable of sedentary work with no repetitive neck movements

and no sustained overhead work consistent with her treating physician, Dr. Depaz, who

released her to sedentary work in 2002.  (R. 17).  The ALJ notes that Dr. Depaz had a

significantly different opinion when he completed a form for Plaintiff's attorney in June

2004, and he declined to give it much weight because it is more restrictive than his

assessment of Plaintiff's abilities right after her accident. Dr. Depaz's notes after this

time do not indicate a worsening or other change in her condition that would correspond

with such significant limitations.  The ALJ also considered the opinion of the surgeon,

who advised Plaintiff that she could return to light duty following her recovery, and the

state agency consultants, particularly Dr. Collins, who opined that Plaintiff could do

sedentary work without pushing or pulling with her upper extremities.  (R. 17).  The ALJ found Plaintiff's allegations not totally credible because her medical condition cannot reasonable be expected to produce incapacitating limitation, an MRI in 2002 showed only mild degenerative changes, and her reports of daily activities are that she can drive, shop, do household chores and some work in her yard.  (R. 18).  Based on the testimony of a vocational expert, Plaintiff cannot perform her past relevant work, but can perform a number of other jobs which exist in the national economy such as food and beverage order clerk, surveillance monitor, and pin clip fastener.

## C.      ISSUES PRESENTED

Plaintiff argues that the ALJ erred in rejecting the opinion of her treating physician, Dr. Oscar Depaz, without good cause or adequate explanation.

The government responds that the treatment notes of Dr. Depaz were inconsistent in that he reported her abilities as better right after the accident to her neck than in his later reports, yet his notes do not reflect a change in her condition that would support a more restrictive finding.  Also, Dr. Depaz's opinion of marked restriction is not supported by Plaintiff's treating surgeon, who opined that she could return to light work activity after surgery, and is contrary to the Functional Capacity Assessments made by state agency physicians.  Thus, good cause was shown for not giving the later opinions of Dr. Depaz, given in response to Plaintiff's attorney's form questionnaire, the full weight usually accorded treating physicians.

**No. 1:05CV194-MP/AK**

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

**D.    STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).  Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It is more than a scintilla, but less than a preponderance.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence supports the findings of the Commissioner.  See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  Unlike the deferential review accorded to the

**No. 1:05CV194-MP/AK**

Commissioner's findings of fact, his conclusions of law are not presumed valid. <u>Martin v.</u>
<u>Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's
failure to apply correct legal standards or to provide the reviewing court with an
adequate basis for it to determine whether proper legal principles have been observed
requires reversal.  <u>Id.</u> (citations omitted).

    A disability is defined as an "inability to engage in any substantial gainful activity
by reason of any medically determinable physical or mental impairment which can be
expected to result in death or which has lasted or can be expected to last for a
continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  To
qualify as a disability the physical or mental impairment must be so severe that claimant
is not only unable to do his previous work, "but cannot, considering his age, education,
and work experience, engage in any other kind of substantial gainful work which exists
in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

    Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in
five steps:

1.      Is the individual currently engaged in substantial gainful activity?

2.      Does the individual have any severe impairment?

3.      Does the individual have any severe impairments that meet or equal those
listed in Appendix 1 of 20 C.F.R. Part 404?

4.      Does the individual have any impairments which prevent past relevant
work?

5.      Do the individual's impairments prevent any other work?

**No. 1:05CV194-MP/AK**

A finding of disability or no disability at any step renders further evaluation unnecessary. Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work. If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

**E.   SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

Plaintiff presented to the emergency room on May 1, 2001, after a metal lid fell on her head at work the day before. (R. 150). Skull x-rays taken at that time were negative and she was sent home with pain medication and instructions to rest for two days. (R. 151). She returned to the hospital on May 7, 2001, complaining of acute neck pain, but the cervical x-ray was normal. (R. 148-149). She was diagnosed with neck strain and told to apply heat and rest. (R. 149).

Plaintiff first saw Dr. Depaz on July 19, 2001, and reported continued pain despite treatment by Dr. Bush at First Care and physical therapy. (R. 222). Dr. Depaz

**No. 1:05CV194-MP/AK**

ordered light work activity, no lifting over 20 pounds, conservative home treatment, and an MRI and EMG.  (R. 224).  The MRI dated July 30, 2001, showed a "fairly large, midline to slightly right sided disc herniation at C6-7" and a "small midline disc protrusion at C5-6."  (R. 221).  An EMG demonstrated cervical radiculopathy and she was treated with injection and medication.  (R. 216-218).  She was to remain off work at this time.  (R. 213, 220).

Dr. Depaz referred her to Dr. Eric Scott, who examined her on September 28, 2001, and recommended surgery, which she had on October 4, 2001, (discectomy allograft fusion) for cervical disc herniations at two levels.  (R. 135, 160-161).  She was released the following day as "temporarily totally disabled" with a follow up appointment in one month.  (R. 136).  She reported to Dr. Scott that she had been hit in the head by a lid from a silk screening machine on April 30, 2001, and had not worked since the accident.  (R. 140).  One month later, the x-ray shows the hardware "acceptably positioned."  (R. 144).  She was released on November 5, 2001, to return to light duty at work with a 20 pound lifting restriction.  (R. 158).  X-rays taken on January 9, 2002, show the fusion, plate and screws, with no complications, but she continued to complain of pain and muscle spasm.  (R. 134, 157).  Dr. Scott noted that she "would need to remain on light duty status at this time," but "her employer did not have anything available."  (R. 157).  In February 2002, Plaintiff still had pain and was continued on temporary disability with no work, and six months post-op, Plaintiff continued to complain of pain, but an MRI taken on March 18, 2002, for Dr. Scott (R. 154) "shows

**No. 1:05CV194-MP/AK**

expected post-operative changes from C5 through C7, no complications evident, mild degenerative changes at C3/4 and C4/5 without significant nerve compromise." Nothing further could be offered Plaintiff by the surgeon and she was referred back to Dr. Depaz for pain management. (R. 153).

In an office visit on April 23, 2002, Dr. Depaz noted "much pain posturing," and prescribed Lortab and Oxycontin with instructions to remain temporarily totally disabled (TTD). (R. 212). His examination was unchanged on May 7, 2002, and Valium was prescribed as well as a refill on the Oxycontin. (R. 210). On May 28, 2002, he examined Plaintiff, changed her medications from Valium and Oxycontin to Neurontin and Oxycontin, and continued her on TTD for 3 to 4 weeks, then "expect release to sedentary-light." (R. 208-209). On July 1, 2002, he injected her again (R. 205-206), and then on July 23, 2002, he wrote, "will continue TTD x 2 weeks and then expect release to at least sedentary/light level activity status. The patient was informed that we do expect release and she should prepare for this." (R. 204). Dr. Depaz started her on Methadone, which she claimed helped (R. 203), and he wrote that he would set MMI (maximum medical improvement) and give her permanent work restrictions after the results of a vocational assessment. (R. 198).

Dr. Depaz referred Plaintiff to vocational rehabilitation for assessment on October 4, 2002, and it was found that she could perform work at the sedentary-light level, but that she could not return to her past work, and she should avoid repetitive neck movements or overhead work. (R. 162-176). On October 21, 2002, after Dr. Depaz

**No. 1:05CV194-MP/AK**

had the vocational results, Plaintiff was examined and told him she had pain on a level of 10 out of 10.  (R. 196).  He refilled her pain medication, added a sleep medication, and told her to continue sedentary to light activity.  (R. 197).  Plaintiff reported continued pain with no relief at a visit on November 12, 2002.  (R. 194).  Pain medications were changed and discussion about their continued use was had.  (R. 194).  On November 22, 2002, Plaintiff reported some relief with the new medication from a level 10 to a 5 or 6, and the doctor noted that she was released to sedentary to light work activity with no neck movements or overhead work required.  (R. 193).  By December 16, 2002, the pain level was up to nearly a 10 again by self report, and the new medication was no longer effective.  (R. 188).  Report of January 16, 2003, shows "breakthrough" pain reported, but despite her reports there was "no change in activity status--remains sedentary per FCE [vocational report]." Reports of January 8, 2004, March 4, 2004, April 29, 2004, and June 24, 2004, finds her "unchanged" and changes in her medication were the only differences in her treatment plan.  (R. 247-253).

Dr. Depaz's report for Plaintiff's counsel dated June 22, 2004, shows her pain level at marked, with moderate to marked levels of restriction defined as able to sit and work for only 30 minutes at a time, up to 5 or 6 hours with five minute stretch breaks every hour, standing only 30 minutes to an hour at a time, walking 3 to 4 hours a day, sitting 6 to 7 hours a day, lifting 5 to 9 pounds frequently and only occasionally lifting 10 to 15 pounds.  (R. 237-246).

**No. 1:05CV194-MP/AK**

A RFC by Dr. Thomas Edwards shows light work level with few restrictions.  (R. 178-185).  Dr. Collins' RFC shows sedentary levels with limitations on pushing and pulling.  (R. 229-236).

Plaintiff reports daily activities that do not appear overly limited.  (R. 106-107).

**F.**     **SUMMARY OF THE ADMINISTRATIVE HEARING (held June 22, 2004)**

Plaintiff was 46 years old at the time of the hearing and completed high school and last worked at Silk Masters silk screening tee shirts.  (R. 275-276).  She was hurt at work and received a workers compensation settlement for $60,000.  (R. 280).  She has pain every day in her right neck, arm and shoulder.  (R. 282).  She also experiences numbness.  (R. 282).  Her pain is a 9 on a scale of 10 in her neck, 8 ½ in her shoulder and a 10 in her arm and fingers.  (R. 283).  She experiences this pain about 4 times a day for 45 minutes at a time.  (R. 283).  The surgery did not help.  (R. 285).  Her current medications are Lortab for pain, Imipram for sleep, and Klonopin for depression.  (R. 286).  Her treatment is seeing Dr. Depaz every two months and taking her medication.  (R. 291).  She attempts some home exercise, as Dr. Depaz suggested.  (R. 291).  The vocational expert testified that Plaintiff's past relevant work was mostly medium, unskilled.  (R. 294-295).  He was asked to assume an individual restricted to lifting 20 pounds occasionally, 10 pounds frequently, no repetitive neck movements and no sustained overhead work.  (R. 295).  The expert testified that she would not be able to do any of her past relevant work, but that there were a number of other jobs which she could perform.  (R. 296).  If the person were required to leave the task for up to 10

**No. 1:05CV194-MP/AK**

minutes at a time five times a day because of pain, she would not be able to perform any of the jobs.  (R. 301).

## G.    DISCUSSION

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).  Nevertheless, the ALJ may discount the treating physician's opinion if good cause exists to do so. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986).  Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating physician's] own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence."  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991), (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)).  If an ALJ rejects a treating physician's opinion, he must give explicit, adequate reasons for so doing, and failure to do so results in the opinion being deemed accepted as true as a matter of law. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992).


**No. 1:05CV194-MP/AK**

Contrary to Plaintiff's argument, the ALJ gave explicit and adequate reasons for rejecting the later opinion of her treating physician and pointed to other evidence in the record, including the treating physicians own records, to support his finding that her medical condition did not reasonable produce the level of pain and limitation she reported.  As the ALJ stated, the records of Dr. Depaz, Dr. Eric Scott, and two state agency physicians found her capable of sedentary to light work activity.  The comprehensive vocational assessment obtained by Dr. Depaz also found her able to do sedentary work with some neck restrictions, but the only report that supported her self reported limitations is the form questionnaire completed by Dr. Depaz for Plaintiff's attorney and in relation to this proceeding.  The ALJ properly gave the opinion expressed on that form less weight.  Upon judicial review, this Court must affirm the administrative decision below when substantial evidence supports it and the ALJ has clearly referenced the evidence supporting her decision.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

At Gainesville, Florida, this **9**$^{th}$ day of March, 2007.

*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

**No. 1:05CV194-MP/AK**

## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

**No. 1:05CV194-MP/AK**